FILED

May 4 2010

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA



DA 09-0531

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 101N

IN THE MATTER OF THE MENTAL HEALTH OF:

T.M.,

      Respondent and Appellant.

APPEAL FROM:   District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. ADI 09-032
Honorable Thomas M. McKittrick, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Joslyn Hunt, Chief Appellate Defender; Koan Mercer, Assistant Appellant
            Defender; Helena, Montana

      For Appellee:

            Hon. Steve Bullock, Montana Attorney General; Matthew T. Cochenour,
            Assistant Attorney General; Helena, Montana

            John Parker, Cascade County Attorney; Marvin Anderson, Deputy County
            Attorney; Great Falls, Montana

Submitted on Briefs: March 31, 2010

Decided: May 4, 2010

Filed:

_____
                          Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2006, the following memorandum decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 T.M. appeals the District Court's order that involuntarily committed her to the Montana State Hospital. We affirm.

¶3 Great Falls Police Department officers contacted T.M. on July 3, 2009, regarding a series of threatening and abusive telephone calls to the office of the governor of Montana. T.M. admitted making the calls. T.M. informed the officers that she suffered from a serious mental illness that required medication. T.M. further admitted that she wanted to burn down her house. T.M. became angry and aggressive toward the officers during the course of the conversation. The officers restrained T.M. and drove her to the emergency room of Benefis Healthcare for examination.

¶4 T.M. became agitated and hostile towards staff members at the hospital. Dr. Patricia Calkin, a board certified psychiatrist, evaluated T.M. and concluded that T.M. suffered from mental disorders and chronic paranoid schizophrenia. Dr. Calkin recommended involuntary commitment at the Montana State Hospital for a period of 90 days. Dr. Calkin further recommended that the Montana State Hospital should have the authority to administer involuntary medication should it become necessary to protect T.M., the hospital staff, and to facilitate treatment.

2

¶5 The District Court found that T.M. suffers from a mental disorder and that she is also an imminent threat of injury to herself and others. The court concluded that commitment to the Montana State Hospital for a period not to exceed 90 days represented the least restrictive and most therapeutic placement for T.M. The court considered and rejected other potential alternatives. The court ordered T.M. committed to the Montana State Hospital for a period not to exceed 90 days. The court also authorized the chief medical officer of the Montana State Hospital to administer appropriate medication involuntarily, if necessary, to protect T.M. or to facilitate her effective treatment. T.M. appeals.

¶6 T.M. argues on appeal that the District Court failed to make detailed factual findings in support of its conclusion that T.M. required commitment to the Montana State Hospital. T.M. further contends that the evidence presented at trial proved insufficient to authorize T.M.'s commitment to the State Hospital. T.M. also challenges the court's conclusion that § 53-21-126(1)(c), MCA, authorized commitment on the grounds that T.M. posed an imminent threat of injury to herself or others.

¶7 We review the District Court's findings of fact for clear error and its conclusions of law for correctness. *In re Mental Health of A.S.B.*, 2008 MT 82, ¶¶ 16-17, 342 Mont. 169, 180 P.3d 625. A finding is clearly erroneous if substantial evidence does not support it, if the district court misapprehended the effect of the evidence, or if this Court is left with a "definite and firm conviction" that the District Court made a mistake. *A.S.B.*, ¶ 16. We review the sufficiency of the evidence in the light most favorable to the prevailing party. *A.S.B.*, ¶¶ 16-17.

¶8     We have determined to decide this case pursuant to Section 1, Paragraph 3(d), of our 1996 Internal Operating Rules, as amended in 2006, that provide for memorandum opinions. It is manifest on the face of the briefs and record before us that substantial evidence supports the District Court's findings of fact and that the court's legal conclusions were correct.

¶9     Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ JIM RICE
/S/ JAMES C. NELSON

Justice James C. Nelson concurs.

¶10    I concur in our Opinion.  I write separately only to address one of the various rationales utilized by the trial court and the State's expert in involuntarily committing T.M. under § 53-21-126(1), MCA.

¶11    Basically, the trial court and the State's expert determined that T.M. posed a threat to herself because she makes inflammatory statements that could precipitate an assault upon her by a third person—i.e., that T.M.'s rude, verbal comments might cause another person to use violence against her and, thus, cause her to be injured.  I strenuously disagree with this rationale.

¶12    For one thing, this rationale is highly speculative—it presumes that persons who are the butt of rude and inflammatory statements will react with violence toward the speaker.

4

We do not—at least yet—live in that sort of society. The vast majority of people who suffer verbal insult are usually restrained if, by nothing else, the threat of criminal prosecution for assault and, thus, do not return verbal abuse with physical violence.

¶13     Additionally, the court's and the expert's approach lessens the evidentiary burden on the State to show that because of the person's mental disorder she is substantially unable to provide for her own basic safety; has, through some recent, overt act or omission, caused injury to herself or others; or may be an imminent threat to herself or others. Again, instead of requiring the State to use direct or circumstantial *evidence,* the court's and the expert's rationale permits the State to meet its burden of proof on the basis of pure *speculation* and *surmise.*

¶14     Finally, no legal authority is cited for this approach.

¶15     More to the point, if we start permitting the involuntary civil commitment of persons who are rude, verbally abusive or who make inflammatory statements and insulting remarks on the premise that such speech will provoke violence against the speaker, then the Legislature had best start building wings on the Montana State Hospital. Recognizing that money is tight, the Legislature could start with a modest expansion—a right wing and a left wing, for example. Then, as money becomes available and this approach catches on, the Legislature could specialize, adding an east wing and a west wing, a shock-jock/talk-show host wing, a wing for religious fanatics, a politicians' wing, a pro-gun/anti-gun wing, a special interest wing, etc. And, the beauty of this approach is that once we give these various

5

wingers a taste of our civil commitment system, society will be a much calmer, albeit less interesting, place.

¶16 I disagree that rude, verbally abusive flamers necessarily suffer from a mental disorder because they might encourage physical retribution upon themselves. They should be ignored, not committed.

¶17 Aside from my disagreement with the above rationale, the court's decision was otherwise sufficient and should be affirmed. Accordingly, with this caveat, I concur.

/S/ JAMES C. NELSON